**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 17-00144 (EAG) |
| OSCAR CRESPO QUIÑONES, | |
| DEBTOR. | |
| ARLENE E. SANTIAGO VELAZQUEZ, | ADVERSARY NO. 19-00397 (EAG) |
| PLAINTIFF/COUNTER DEFENDANT | |
| v. | |
| OSCAR CRESPO QUIÑONES, | |
| DEFENDANT/COUNTERCLAIMANT. | FILED & ENTERED ON 11/3/2021 |

**OPINION AND ORDER**

Pending before the court is the motion for partial summary judgment filed by Dr. Crespo, the opposition and cross-motion for partial summary judgment filed by Ms. Santiago, and the parties' various replies.  (Adv. Dkt. Nos. 93, 118, 127, 132, & 139.)  For the reasons stated below, the court denies both motions for partial summary judgment.

**I.      Jurisdiction.**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.).[1]  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

---

[1]Unless otherwise indicated, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532.  All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are

### II. Procedural History.

On January 13, 2017, Oscar Crespo Quiñones ("Dr. Crespo" or "debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[2] (Bankr. Dkt. No. 1.) No plan was confirmed, and the case was converted to chapter 7 in August 2018, on the debtor's request. (Bankr. Dkt. No. 189 & 193.)

On July 12, 2019, the debtor's ex-wife Arlene Santiago Vazquez ("Ms. Santiago") filed an adversary proceeding against the debtor for nondischargeability of debts incurred by false pretenses, false representations or actual fraud under section 523(a)(2) and for debts incurred by defendant's willful and malicious injury under section 523(a)(6). (Adv. Dkt. No. 1.) On September 6, 2019, Dr. Crespo filed an answer and counterclaims seeking a declaratory judgment that neither of Ms. Santiago's two proofs of claim qualify as domestic support obligations ("DSO"), as well as counts for violation of the automatic stay and civil contempt. (Adv. Dkt. No. 16.)

Both parties filed motions to dismiss. (Adv. Dkt. No. 24 & 53.) While this matter was pending before the court, Dr. Crespo moved for offensive summary judgment as to the declaratory judgment count of his counterclaims on August 3, 2020. (Adv. Dkt. No. 93.)

On March 26, 2021, the bankruptcy court entered an opinion and order granting Dr. Crespo's motion to dismiss the complaint and denying Ms. Santiago's motion to dismiss the

---

to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

[2] A more thorough recitation of this case's procedural history can be found in the court's opinion and order dated March 26, 2021. (Adv. Dkt. No. 109.)

counterclaims. (Adv. Dkt. No. 109.) The court set a deadline for Ms. Santiago to respond to Dr. Crespo's motion for partial summary judgment, which was later extended. (Adv. Dkt. Nos. 110, 121.)

On May 11, 2021, Ms. Santiago filed her opposition and cross-motion for partial summary judgment. (Adv. Dkt. No. 118.) Both parties have since replied. (Adv. Dkt. Nos. 127, 132, & 139.)

On September 3, 2021, Ms. Santiago moved to dismiss the main bankruptcy case with a two-year bar to re-file, arguing that the debtor converted the case to chapter 7 in bad faith since he acknowledged that such a conversion would not be to the benefit of the estate or its creditors. (Bankr. Dkt. No. 297.) Ms. Santiago also argued that the case is essentially a two-party dispute and reiterated prior arguments alleging that Dr. Crespo concealed assets. Id. Dr. Crespo opposed on October 11, 2021, and Ms. Santiago's reply is not yet due. (Bankr. Dkt. Nos. 309, 310, 312, & 313.)

On October 26, 2021, oral arguments on the motions for summary judgment were heard.

**III.    Uncontested Facts.**

The following facts are uncontested pursuant to Rule 56 and Local Civil Rule 56, made applicable to these proceedings by Bankruptcy Rules 9014(c) and 7056 and Local Bankruptcy Rules 1001-1(b) and (d):

Dr. Crespo and Ms. Santiago met in 1997, while Ms. Santiago was working as a medical sales representative. (Adv. Dkt. No. 118 at p. 12; Adv. Dkt. No. 127 at p. 7; Adv. Dkt. No. 118-2

at p. 6.)  The two courted for several years before marrying on May 18, 1999 in San Juan, Puerto Rico.  Id.

Prior to getting married, Dr. Crespo requested that Ms. Santiago "stop working, and in exchange, he offered her as guarantee support of $5,000 [per] month to be payable in the event that they divorced."[3]  (Adv. Dkt. No. 118 at p. 13; Adv. Dkt. No. 127 at p. 8; Adv. Dkt. No. 118-2 at p. 6.)  To memorialize this, Dr. Crespo and Ms. Santiago entered into a prenuptial agreement, which was executed by a public deed dated April 15, 1999.  (Adv. Dkt. No. 118 at p. 13; Adv. Dkt. No. 127 at p. 9; Adv. Dkt. No. 118-2 at p. 7.)  The agreement included, among other things, the following clause:

> FOURTH:  The parties clarify and agree that the appearing party Arlene Ethel Santiago at present has a salary from her current job of Five Thousand Dollars monthly.  In the event that the appearing parties divorce, appearing party Oscar Crespo  Quiñones agrees  to establish a support for a value equivalent to said Five Thousand Dollars, taking in consideration the cost of living that said amount represents at this time.

Id.

The parties divorced in 2006.  The divorce decree, entered October 30, 2006 and amended nunc pro tunc on December 27, 2006, incorporated the fourth clause of the prenuptial agreement, stating: "the stipulated clauses of the prenuptial agreements [sic] on the payment of the $5,000 a month to benefit Mrs. Santiago will go into effect" on November 1, 2006.  (Adv. Dkt. No. 118 at pp. 13-14; Adv. Dkt. No. 127 at pp. 10-11; Adv. Dkt. No. 118-1 at p. 4.)  The divorce decree also stated that "there is [sic] no conjugal assets as the parties

---

[3]As will be discussed in more detail below, Dr. Crespo denies that the monthly payments in question are in the nature of support, pointing to several local court rulings regarding the payments.  (Adv. Dkt. No. 127 at p. 8).

granted prenuptial agreements." (Adv. Dkt. No. 118-1 at p. 4.) The remainder of the divorce decree dealt with custody, visitation rights, and child support (including utility expenses for Ms. Santiago's residence), as well as educational, medical, and travel expenses for the two minor children. (Adv. Dkt. No. 118-1 at p. 3.)

Local Court Litigation

Dr. Crespo failed to make the payments, so in October 2008, Ms. Santiago moved the family court to find Dr. Crespo in contempt. (Adv. Dkt. No. 93 at p. 8; Adv. Dkt. No. 118 at p. 4; Adv. Dkt. No. 93-1.) Ms. Santiago alleged that, at that time, Mr. Crespo owed her $115,000.00 in back payments. Id. The family court denied Ms. Santiago's motion, stating that the matter must be resolved in a separate action. (Adv. Dkt. No. 93 at p. 9; Adv. Dkt. No. 119 at p. 5; Adv. 93-2 at p. 4.)

Ms. Santiago appealed, which the Puerto Rico Court of Appeals denied in a judgment dated November 18, 2009, stating:

> [W]e consider that this dispute is one that should be adjudicated by the Courtroom of the Court of First Instance that is hearing the matter of the division of assets between the parties. What the petitioner is seeking is not the performance of an obligation that arises out of a court settlement agreement in a divorce on the grounds of mutual consent, which can be enforced through execution of judgment, Igaravidez v. Ricci, 147 D.P.R. 1, 7 (2004), but rather the performance of an obligation that arises out of a prenuptial agreement, which must be claimed in an action for breach of contract. See, Articles 1077 and 1267 of the Civil Code, 31 L.P.R.A. § 3052 and 3551. Furthermore, what the petitioner is claiming cannot be the object of contempt of court. Pabón Rodríguez y Díaz López, Ex parte, 132 D.P.R. 898, 902 (1993). Therefore, there was no error in this regard.

(Adv. Dkt. No. 93 at p. 10; Adv. Dkt. No. 118 at pp. 5-6; Adv. Dkt. No. 93-3 at p. 4.)

On December 14, 2010, Ms. Santiago filed a breach of contract and collection action against Dr. Crespo in Puerto Rico Superior Court, seeking to collect the amounts owed. See

5

Civil Case No. K AC2010-1494. (Adv. Dkt. No. 93 at p. 10; Adv. Dkt. No. 119 at p. 6; Adv. Dkt. No. 93-4.) At the hearing, Ms. Santiago testified that Dr. Crespo agreed that the monthly payment would be paid "even when she were in a productive stage," which the court takes to mean even when if Ms. Santiago were employed, and that "[Dr. Crespo's] intention was to pay a lifelong support for her to dedicate herself to the care of the children and she would benefit for the rest of her life." (Adv. Dkt. No. 118 at p. 13; Adv. Dkt. No. 127 at p. 9; Adv. Dkt. No. 118-2 at pp. 8-9.)

In a judgment issued July 12, 2013, the Superior Court found for Ms. Santiago, holding that Dr. Crespo was liable for all payments missed since the divorce was decreed, plus legal interest. (Adv. Dkt. No. 118-2 at p. 22.) In doing so, the court reiterated that the lawsuit was not a claim for ex-spousal support, that the Puerto Rico Court of Appeals had already decided th issue making it the law of the case, and that "all that was left was to demand compliance of the contractual obligations through a lawsuit independent from the divorce." (Adv. Dkt. No. 93 at pp. 10-11; Adv. Dkt. No. 118 at p. 7; Adv. Dkt. No. 93-4 at pp. 19-21.)

Dr. Crespo moved to reconsider the judgment, which was denied. (Adv. Dkt. No. 93 at pp. 11-12; Adv. Dkt No. 118 at pp. 7-8; Adv. Dkt. No. 93-5.) The court echoed its previous statement, finding that:

> The Court of Appeals was clear in its mandate when it concluded that the claim could not be settled within the divorce litigation, but in an independent litigation as one of specific compliance of the contract and not as a collection of nutritional support.

(Adv. Dkt. No. 93 at pp. 11-12; Adv. Dkt. No. 118 at pp. 7-8; Adv. Dkt. No. 93-5 at p. 3.)

Several years later, in the same lawsuit, Mr. Crespo filed a petition for a writ of certiorari to the Puerto Rico Court of Appeals to review an order issued by the Court of First

Instance, Superior Court, on February 21, 2019.  (Adv. Dkt. No. 93 at pp. 12-13; Adv. Dkt. No. 118- at pp. 8–9; Adv. Dkt. No. 93-6.)  The Court of Appeals stated in a resolution dated April 2, 2019:

> The documents contained in the file in this case clearly reflect that the nature of the monthly $5,000.00 debt in favor of Mrs. Santiago Velázquez arises out of an obligation incurred under a prenuptial agreement, not out of an obligation arising out of a court settlement agreement in divorce proceedings on the grounds of mutual consent.  Based on the foregoing, this Court had already held in its judgment of July 12, 2013, that what the respondent is claiming is not alimony support and cannot be the object of contempt.[4]

(Adv. Dkt. No. 93 at pp. 12-13; Adv. Dkt. No. 118 at pp. 8-9; Adv. Dkt. No. 93-6.)

On April 3, 2019, a hearing was held in local court on Ms. Santiago's suit to recover the monthly payments from Dr. Crespo.  (Adv. Dkt. No. 93 at p. 13; Adv. Dkt. No. 118 at p. 9; Adv. Dkt. No. 93-7.)  During the hearing, the judge stated that the debt in question was "not domestic support," and that the Puerto Rico Court of Appeals had already determined that the obligation "is not support," and that "[t]his case is about a contract between two parties." (Adv. Dkt. No. 93 at pp. 13-14; Adv. Dkt. No. 118 at pp. 10-11; Adv. Dkt. No. 93-7 at pp. 4, 16.)

Bankruptcy Case

On January 13, 2017, Dr. Crespo filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which was later converted to chapter 7 in August 2018.  (Bankr. Dkt. Nos. 1 & 193.)

On March 31, 2017, Ms. Santiago filed proof of claim #3-1, which she later amended twice.  (Adv. Dkt. No. 118 at p. 15; Adv. Dkt. No. 127 at p. 13; Claims Register Nos. 3-1, 3-2, &

---

[4]/Only a portion of the resolution was submitted to the bankruptcy court in Dr. Crespo's motion for partial summary judgment, so the court is unaware of the outcome of Dr.  Crespo's petition for writ of certiorari.

3-3.) Her last-filed proof of claim is in the amount of $2,427,722.50, of which $956,104.45 is listed as priority as a DSO. (Claims Register No. 3-3.) The claim corresponds to judgments entered in two local court cases. Id.

On September 13, 2018, Ms. Santiago filed proof of claim #11-1 in the amount of $100,000.00, wholly priority, for administrative expenses based on DSO arrears accrued from the date of the filing of the petition up to the date of the conversion of the case to chapter 7. (Adv. Dkt. No. 118 at p. 14; Adv. Dkt. No. 127 at p. 12; Claims Register No. 11-1.)

On September 20, 2018, Ms. Santiago filed a motion for relief of stay. (Adv. Dkt. No. 118 at pp. 14-15; Adv. Dkt. No. 127 at p. 12; Bankr. Dkt. No. 211.) On October 16, 2018, the bankruptcy court entered an order modifying the automatic stay as follows:

> The stay is modified to allow movant to go forward to the point of judgment on the piercing of the corporate veil. That would include naming the individual Debtor and whatever discovery is appropriate. Once there is a decision on the piercing of corporate veil, Movant is to inform this Court. Movant may extend the deadline to object to the Discharge. Also, the stay is modified to allow the Movant, Creditor to go forward in the State Court for collection of post conversion of Domestic Support Obligation claims.

(Adv. Dkt. No. 118 at p. 15; Adv. Dkt. No. 127 at p. 13; Bankr. Dkt. No. 233.)

On September 30, 2021, discharge was entered. (Bankr. Dkt. No. 304.)

**IV. Summary Judgment Standard.**

The standard for summary judgment is well-known. Pursuant to Rule 56, made applicable to these proceedings by Bankruptcy Rules 7056 and 9014(c), summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);

Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue exists as to any material fact" and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists" that would warrant the court's denial of the motion for summary judgment. McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id. However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine. Id. An issue is "genuine" if it could be resolved in favor of either party. A fact is "material" if it is potentially outcome-determinative. See Calero-Cerezo v. United States DOJ, 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and

9

likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). Thus, "a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." United States v. 100,000 in United States Currency, 305 F. Supp. 3d 238, 245 (D. Mass. 2018) (quoting Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991).

"The [trial] court is freed from the usual constraints that attend the adjudication of summary judgment motions" when "'the basic dispute between the parties concerns the factual inferences . . . that one might draw from the more basic facts to which the parties have drawn the court's attention,' where 'there are no significant disagreements about those basic facts,' and where neither party has 'sought to introduce additional factual evidence or asked to present witnesses.'" Equal Employment Opportunity Comm'n v. Steamship Clerks Union 1066, 48 F.3d 594, 603 (1st Cir. 1995) (quoting Federacion de Empleados del Tribunal Gen. de Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984)). In those circumstances, "[t]he court may then engage in a certain amount of differential factfinding, including the sifting of inferences." Id.

10

## V.    Legal Discussion.

Dr. Crespo moves for summary judgment on his first counterclaim, which seeks a declaratory judgment finding that the portions of Ms. Santiago's proofs of claim labeled as domestic support obligations do not qualify as such, and are therefore dischargeable. (Adv. Dkt. 16 at pp. 21-26, 29.)  Dr. Crespo contends that the local court already ruled on multiple occasions that Dr. Crespo's obligation under the divorce decree to make monthly payments to Ms. Santiago in the amount of $5,000 was not in the nature of support.  The debt that Dr. Crespo owes Ms. Santiago for failure to make those payments, he maintains, does not qualify as a domestic support obligation, and thus does not satisfy the grounds for nondischargeability under section 523(a)(5).  Dr. Crespo argues that to hold otherwise would effectively overrule the local court judgments on the matter, thus violating principles of res judicata and the Rooker-Feldman doctrine.

Ms. Santiago counters that a determination of whether a debt constitutes a domestic support obligation is a question of federal–not state–law.   She contends that the prenuptial agreement, as incorporated into the divorce decree, as well as findings made by the local trial court in its July 12, 2013 judgment together establish that the obligation is in the nature of support, and thus constitutes a domestic support obligation under section 101(14A), making the debt nondischargeable.

While the parties' papers focus primarily on whether Dr. Crespo's debt to Ms. Santiago is a domestic support obligation, this does not fully take into account the scope of the relief being requested by Dr. Crespo in his counterclaim.  He is not just looking for a determination that the debt is not a domestic support obligation and that section 523(a)(5) does not apply

11

here.  Rather, he asks that the court rule that the debt is dischargeable.

This the court cannot do, because even if we found that the debt in question is not a domestic support obligation, and therefore that section 523(a)(5) does not control, there are other grounds for nondischargeability under section 523(a) that Ms. Santiago did not include in her complaint but that are not time barred, most notably section 523(a)(15).

While section 523(a)(5) excepts DSO from discharge, section 523(a)(15) is much broader, excepting from discharge a debt owed "to a spouse, former spouse, or child of the debtor . . . that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record." 11 U.S.C. §§ 523(a)(15).

The two provisions work in concert to make any debt, with limited exceptions, owed to an ex-spouse under a divorce decree nondischargeable.  As the court in Taylor v. Taylor (In re Taylor) stated:

> Essentially, the combination of amended § 523(a)(5) and (15) [] exclude from discharge all marital and domestic relations obligations, whether support in nature, property division, or hold-harmless, provided that they were incurred in the course of a divorce or separation or established in connection with a separation agreement, divorce decree, or other order of a court of record or a determination made in accordance with state or territorial law by a governmental unit.

Taylor v. Taylor (In re Taylor), 478 B.R. 419, 428-29 (B.A.P. 10th Cir. 2012) (quoting Hon. William Houston Brown & Lawrence R. Ahern III, 2005 Bankruptcy Reform Legislation With Analysis 2d § 7:42 (2006)).

Although the question of whether the obligation here qualifies as a domestic support obligation is admittedly thorny, with both parties claiming that local court judgments support

12

their positions, the analysis under section 523(a)(15) is "much simpler" than under section 523(a)(5). Inman v. Hearn (In re Inman), 2012 Bankr. LEXIS 2859, at *50 (Bankr. S.D. Fla. June 22, 2012). "[A] debt will be excepted from discharge under § 523(a)(15) when these three elements are met: (1) the debt in question is to a spouse, former spouse or child of the debtor; (2) the debt is not a support obligation of the type described in § 523(a)(5); and (3) the obligation was incurred during the course or in connection with a separation agreement, divorce decree or other order of a court of record." Id. (quoting Reissig v. Gruber (In re Gruber), 436 B.R. 39, 44 (Bankr. N.D. Ohio 2010)).

Here, it cannot be seriously disputed that Dr. Crespo's obligation to his ex-wife Ms. Santiago is "in connection with a separation agreement, [or] divorce decree." The prenuptial agreement, which was incorporated into the divorce decree, plainly states that the parties' divorce is what triggered the obligation. The agreement reads in part:

> In the event that the appearing parties divorce, appearing party Oscar Crespo Quiñones agrees to establish a support for a value equivalent to said Five Thousand Dollars taking into consideration the cost of living that said amount represents at this time.

(Adv. Dkt. No. 118-2 at p. 7.) Put another way, "but for" the parties' divorce, Dr. Crespo would not have had to make the payments to Ms. Santiago. Cf. Vestavia Hills, Ltd. v. United States SBA (In re Vestavia Hills, Ltd.), 618 B.R. 294, 300 (Bankr. S.D. Cal. 2020), vacated, 630 B.R. 816 (S.D. Cal. 2021), vacated, 2021 U.S. Dist. LEXIS 58373 (S.D. Cal. Mar. 26, 2021) (finding APA claims to be core "because these particular APA claims involve a dispute that could not have arisen but for Plaintiff's bankruptcy case.")

And, the court points out that Ms. Santiago is not time barred from bringing a section 523(a)(15) complaint. Unlike complaints brought under section 523(a)(2), (4), or (6), a

13

section 523(a)(15) complaint can be brought at any time.  Fed. R. Bankr. P. 4007(b) ("A complaint other than under [Sec.] 523(c) may be filed at any time.") See 4 Collier on Bankruptcy ¶ 523.04 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("There are no specific time deadlines imposed by the Code or the Federal Rules of Bankruptcy Procedure for the determination of the dischargeability of a debt with respect to section 523(a) discharge exceptions other than those arising under subsections 523(a)(2), (4) and (6).") In fact, a party can even move to reopen a bankruptcy case in order to file such a complaint.  Id.

All of that being said, the court clarifies that it is not now making a dischargeability determination under section 523(a)(15), since no complaint has been brought under that section in this adversary proceeding.  Nor does the court intend to give an advisory opinion on the merits of such an action.  Instead, we include the above analysis only to illustrate the impossibility of granting the relief that Dr. Crespo seeks in Count 1 of his counterclaims.

At oral arguments on the motions for summary judgment, Dr. Crespo argued that Ms. Santiago had waived her right to bring an action under section 523(a)(15) under the doctrine of res judicata because she did not raise it in her original complaint, which has since been dismissed.  While the court is sympathetic to this argument, ultimately we disagree.

It is true that res judicata, more specifically claim preclusion, bars a party from later bringing claims based on the same nucleus of operative facts that " were raised or could have been raised in an action for which a final judgment has been issued."  Cichocki v. Mass. Bay Cmty. Coll., 199 F. Supp. 3d 431, 439 (D. Mass. 2016) (citing Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 177 (1st Cir. 1999)).  Here, though, no final judgment has been entered in this adversary proceeding as of yet, since Dr. Crespo's counterclaims are still

pending. Claim preclusion, therefore, does not apply. See Havercombe v. Dep't of Educ. of P.R., 250 F.3d 1, 3 (1st Cir. 2001) ("three elements must exist for claim preclusion to apply: (1) a final judgment on the merits in an earlier suit; (2) sufficient identity between the causes of action asserted in the earlier and later suits; and (3) sufficient identity between the parties in the earlier and later suits.") (citing Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir. 1991)

With that said, there is no doubt that the best practice would have been for Ms. Santiago to bring counts for nondischargeability under section 523(a)(5) and (a)(15) in her complaint. This would have covered either scenario, making a determination on whether the debt is a domestic support obligation academic. See Yelverton v. Senyi De Nagy-Unyom (In re Yelverton), 2012 Bankr. LEXIS 4394, at *26 (Bankr. D.D.C. Sep. 24, 2012) ("Whether Senyi's claims against Yelverton arising under the prenuptial agreement are domestic support obligations or are, instead, in the nature of a property settlement, is a purely academic issue because both categories of obligation are nondischargeable in a chapter 7 case commenced after the effective date of BAPCPA. See 11 U.S.C. § 523(a)(5) and § (a)(15).") (emphasis added); 4 Collier on Bankruptcy ¶ 523.23 ("Thus, in individual cases under chapters 7 and 11 and in cases under chapter 12, all of which base dischargeability on the subsections of section 523(a), the distinction between a domestic support obligation and other types of obligations arising out of a marital relationship is of no practical consequence in determining the dischargeability of the debt."). Doing so would also no doubt have streamlined litigation in this case, which was filed more than two years ago.

15

But, Dr. Crespo is not without blame, either. While his counterclaim does refer to section 523(a)(5), he does not address section 523(a)(15) in his counterclaims or briefs. Given the expansive nature of the relief requested by Dr. Crespo in his counterclaim, it is his burden to show that none of the nondischargeability grounds apply here. And, while most of those could easily be disposed of as inapplicable or time barred, the court finds that Dr. Crespo should have directly addressed the applicability of section 523(a)(15) to Ms. Santiago's claims since the debt in question is owed to an ex-spouse under the terms of a divorce decree, and therefore at least facially appears to fall under the ambit of that section.

In view of this, and keeping the mind "Congress's recognition that the economic protection of dependent spouses and children under state law is no longer accomplished solely through the traditional mechanism of support and alimony payments," 4 Collier on Bankruptcy ¶ 523.23, the court finds Dr. Crespo's argument unavailing.

**VI.    Conclusion.**

Based on the foregoing, the court cannot determine, at this time, as a matter of law whether or not Ms. Santiago's claims are dischargeable. Accordingly, the court denies both Dr. Crespo's motion for partial summary judgment at docket number 93 and Ms. Santiago's cross-motion for summary judgment at docket number 118.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this 3rd day of November 2021.

Edward A. Godoy
U.S. Bankruptcy Judge

16